S v. Lassen County et al.                                                                                          Doc. 74

Case 2:05-cv-01217-JKS-CMK   Document 74   Filed 06/05/2007   Page 1 of 12

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM S., | No. Civ. S-05-1217 DFL CMK |
| Plaintiff, | <u>Memorandum of Opinion and Order</u> |
| v. | |
| LASSEN COUNTY; MELODY BRAWLEY; KEVIN MANNEL; LYNNE MARGOLIES; KIM PERKINS; and RONALD VOSSELOR, | |
| Defendants. / | |

Plaintiff William S. ("William") sued Lassen County ("Lassen") and numerous individual defendants alleging improper public disclosure of his medical condition. Following the dismissal of the individual defendants, only Lassen remains as a defendant in this action. Lassen moves for summary judgment on William's intentional infliction of emotional distress ("IIED") and Americans with Disabilities Act ("ADA") claims. For the reasons below, the court GRANTS the motion in part.

I.

On February 23, 2004, Lassen hired William as a social worker. Def's SUF ¶ 1. On August 16, 2004, William learned from a client that his name was among 50 to 100 on a list of individuals with communicable diseases posted in Lassen's Medi-Cal eligibility office. Id. ¶¶ 21-22, 25. The list noted the specific illnesses of some individuals served by the office, including William. Pl.'s SUF ¶ 4. A Lassen employee claims that the list's "purpose was to give information to eligibility workers that had to interview people that had communicable diseases so that the eligibility worker would be more prepared to interview them." Johnson Depo. 10:22-25. Lassen states that the list was first placed on the wall between 1994 and 1996. Def.'s SUF ¶ 24. William states that it was posted prior to 1999. Pl.'s SUF ¶ 4. Melody Brawley, Director of Lassen Works & Community Social Services, learned of the list in the spring of 2004. Def.'s SUF ¶ 28. Brawley instructed a caseworker supervisor to destroy the list by shedding it, although the parties dispute whether Brawley acted properly. See Pl.'s Resp. to Def.'s SUF ¶ 29. William alleges that he was "embarrassed and distraught" after being notified that his name had been displayed on the list. Pl.'s Resp. to Def.'s SUF ¶ 17.

On February 2, 2005, William filed a claim form with Lassen regarding his inclusion on the posted list. William S. v.

Lassen Co., et al., S-05-1217, 2006 WL 3388531, at * 1-2 (E.D.Cal. Nov. 11, 2006). In the claim, William unnecessarily disclosed his condition and did not request that the information be kept confidential. Id. Lassen, consistent with its practice at the time, posted William's claim form on the internet by linking it to the online agenda for the meeting at which it was to be discussed. Id. William objected to the public posting of his claim form and requested that Lassen remove it from the internet.[1] He states that he was "upset because his medical condition continuously remained on the internet after he repeatedly requested that it be withdrawn." Pl.'s Resp. to Def.'s SUF ¶ 17.

    The same month William filed his claim, Lassen promoted him to social worker II status. William Depo., Jan. 25, 2006, 112:4-9. A supervisor later asked him to apply for a social worker III position, but Merit Systems, the organization responsible for human resources decisions, decided that he lacked sufficient experience for the position. Id. at 112:13-21. Thereafter, Lassen promoted him to "lead social worker," a position he held for two or three weeks before resigning. Id. at 112:22-113:7. William does not believe that the disclosure

---

[1] The court previously held that William had no reasonable expectation of privacy to the information he voluntarily disclosed in the claim form. William S., 2006 WL 3388531, at *1-2.

of his condition affected his performance reviews.  Id. at 109:10-22.  Rather, he states that his co-workers were typically "very complimentary" about his work.  Id. at 212:11-14.

II.

William alleges that he was the victim of intentional infliction of emotional distress under California law and a hostile work environment under the Americans with Disabilities Act.  These claims are addressed individually below.

A.   <u>Intentional Infliction of Emotional Distress</u>

William argues that Lassen County intentionally inflicted severe emotional distress upon him.  An IIED claim requires "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  <u>Christensen v. Superior Court of Los Angeles County</u>, 54 Cal.3d 868, 903 (1991) (citations omitted).  Moreover, "[i]t is not enough that the conduct be intentional and outrageous.  It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware."  Id. at 903.

William alleges that Lassen, the only remaining defendant, "failed to promote and adopt a system" requiring employees to

protect employee privacy rights and confidential medical information. SAC ¶ 45. William argues that Lassen demonstrated its disregard for such rights by tolerating the office posting of the communicable disease list and the internet posting of William's claim form disclosing his condition. These claims lack merit. Even assuming that Lassen's conduct was outrageous, William does not demonstrate that Lassen's alleged failure to implement a privacy policy was intentionally directed at him or occurred in his presence. See Christensen, 54 Cal. 3d. at 903. Lassen presents evidence of various efforts to enforce a county-wide privacy policy. Def.'s SUF ¶ 10. William fails to present evidence showing that Lassen intentionally abandoned established policy or followed a different policy to inflict emotional distress upon him.[2] Therefore, the court GRANTS summary judgment as to the IIED claim against Lassen for its conduct.

William also argues that Lassen should be held responsible for the conduct of its employees. "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment

---

[2] William's response to Lassen's evidence regarding its county privacy policy does not create a material dispute of fact. See Pl.'s Resp. to Def.'s SUF ¶ 10. William asserts without evidentiary support that Lassen maintained a policy of posting communicable disease lists without permission of those named. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)(requiring "the nonmoving party to go beyond the pleadings" to create a material dispute of fact).

if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Cal. Gov. Code § 815.2(a). Lassen argues that William's decision to dismiss with prejudice his claims against Lynne Margolies, Kevin Mannel, and Melody Brawley bars him from pursuing claims against Lassen based upon the employees' conduct. See O'Hara v. Teamsters Local Union No. 856, 151 F.3d 1152, 1159 (9th Cir. 1998). Lassen overstates the effect of the dismissals.

Plaintiffs are masters of their claim and may add or drop parties as allowed by applicable rules of procedure. See Fed. R. Civ. Pro. 21. The res judicata doctrines vaguely invoked by Lassen protect "litigants from the burden of relitigating an identical issue with the same party or his privy and . . . promot[e] judicial economy by preventing needless litigation." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979). Such concerns are not present here. Although William's respondeat superior claims against Lassen concern the same conduct as his claims against the dismissed employee defendants, Lassen was not a party or in privity with a party to William's dismissal agreement. See Carden v. Otto, 37 Cal.App.3d 887, 892 (1974) (discussing requirements for privity between employee and employer for res judicata purposes). The dismissals bar William from later pursuing an action against the employee defendants

for the conduct alleged here, but leave him free to pursue existing claims against the remaining party, Lassen.

William alleges that Lassen employees Margolies, Mannel, and Brawley "made knowledge about the Plaintiff and his medical condition available to the public without his authority or consent" and "made statements . . . that hold the Plaintiff in disdain without regard to his work and competency but only with regard to his medical condition." 2AC ¶¶ 42-43. William alleges that the employees directed their actions at him and often acted in his presence. See Christensen, 54 Cal. 3d. at 903. For example, William claims that: (1) Margolies circulated an inter-office memo recommending against hiring him due to his prior EEOC complaint and medical condition,[3] William Depo., Jan. 25, 2006, 183:9-19; (2) Mannel refused to remove his claim form from the internet and told him that he should "get over" the fact that his medical condition had been publicly disclosed, William Depo., Jan. 25, 2006, 92:8-17; and (3) Brawley was aware of the communicable list but intentionally took no action until others raised the issue and unreasonably delayed destruction of the list following William's complaints, compare Brawley Depo., 15:1-19 with Johnson Depo., 15:16-16:9.

---

[3] The parties dispute the authenticity of this memo.

A material dispute of fact remains as to whether the employees' actions rise to the level of conduct actionable in an IIED claim. Construing the facts in the light most favorable to William, the court finds that the alleged actions of Lassen employees were sufficiently severe that a reasonable trier of fact could find them extreme and outrageous. See <u>Bundren v. Superior Court of Ventura Co.</u>, 145 Cal.App.3d 784, 792 (1983)(holding questions of unreasonableness and outrageousness are more appropriately decided by a trier of fact hearing live testimony than on summary judgment); <u>see also</u> <u>Johnson v. Hawe</u>, 338 F.3d 676, 687 (9th Cir. 2004)("The determination of whether conduct is outrageous is ordinarily a jury question, but the court must initially determine if reasonable minds could differ on whether the conduct was so extreme as to result in liability." (internal quotation marks and citation omitted)). Therefore, the court DENIES summary judgment as to the IIED claim against Lassen for the conduct of its employees.

B.   <u>Hostile Work Environment</u>

William argues that Lassen violated the ADA by creating a hostile work environment when it disclosed his medical condition and failed to take requested remedial action. William does not cite specific sections of the ADA for his hostile work environment claim. The Ninth Circuit "has not yet held that such a claim exists, let alone what its source in the statute

might be." See Brown v. City of Tucson, 336 F.3d 1181, 1190 n. 14 (9th Cir. 2003). The court finds that William's hostile work environment claim most closely resembles an ADA discrimination claim, 42 U.S.C. § 12112(a), and construes it as such. Section 12112(a) bars discrimination based upon disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." "[T]he ADA outlaws adverse employment decisions motivated, even in part, by animus based on a plaintiff's disability or request for an accommodation." Head v. Glacier Northwest Inc., 413 F.3d 1053, 1065 (9th Cir. 2005).

William fails to demonstrate that a dispute of material fact exists as to whether he suffered an adverse employment action.[4] In his opposition, William notes four instances of alleged discrimination by Lassen. First, he alleges that Margolies circulated a memo demanding that his employment offer be rescinded due to his earlier EEOC claim and medical condition. William Depo., Jan. 25, 2006, 183:9-19. Despite the letter, Lassen maintained its offer and William accepted it.

---

[4] William alleges in his Second Amended Complaint that Lassen failed to give him an interview or hire him from 1999 until 2004 because of his medical condition, ¶¶ 7-9, but does not raise this conduct in his opposition to Lassen's summary judgment motion or provide evidence sufficient to create a material dispute of fact. See Celotex Corp, 477 U.S. at 324.

SAC ¶ 12.  Second, he alleges that Lassen disclosed his condition on the internet and refused to remove it upon his requests.  See William S., 2006 WL 3388531, at *1; see also William Depo., Jan 25, 2006, 92:8-17.  William does not allege that the posting had any adverse effect upon the terms, conditions or privileges of his employment.  The posting was the result of his own activity that was unrelated to his employment.  Third, he alleges that Lassen was generally non-responsive to violations of his privacy and that an employee told him to "get used to it."  William Depo., Jan 25, 2006, 92:8-17.  Again, William does not allege that the lack of action by Lassen or subsequent comments by its employees affected his employment status.  The list at issue was not a list of employees, but of persons who received services from the Lassen office.  Fourth, William alleges that his superiors, to compensate him for their prior actions, encouraged him to apply for positions for which he did not qualify.  He relies entirely on his own assertions in explaining his superiors' motivations and cites no authority holding encouragement for promotion, even if futile, to amount to harassment.  Moreover, although William did not receive the promotion at issue, he admits that his lack of qualifications, not animus based on his disability, resulted in the denial.  Id. at 112:4-115:6.

Lassen presents sufficient evidence to rebut William's claims of disability-based animus. William's two performance reviews during his tenure at Lassen found his work to be "above satisfactory to excellent." Id. at 109:10-22. Although William resigned from his position, he does not allege that conditions were so intolerable at the time as to make his resignation a constructive discharge. Wallace v. City of San Diego, 479 F.3d 616, 625-26 (9th Cir. 2007)("Constructive discharge occurs when, looking at the totality of the circumstances, a reasonable person in [the employee's] position would have felt that he was forced to quit because of intolerable and discriminatory working conditions." (internal quotation marks and citation omitted)). William fails to create a dispute of material fact as to whether Lassen subjected him to an adverse employment action because of his condition. Therefore, the court GRANTS summary judgment as to the ADA claim.

### III.

For the above reasons, the Court GRANTS summary judgment as to William's IIED claim against Lassen for its actions as a county and William's ADA claim. The Court DENIES summary judgment as to William's IIED claim against Lassen for the actions of its employees.

IT IS SO ORDERED.

Dated:  June 4, 2007

/s/ David F. Levi_____
DAVID F. LEVI
United States District Judge